Currey v. The State.

## CURREY v. THE STATE.

1. CRIMINAL LAW. *Indictment. When lost. Copy to be had in felony cases.* Defendant in felony cases may lawfully be put upon his trial upon copy of indictment copied from the minutes when the original has been " lost, destroyed, misplaced, or purloined."

2. SAME. Where the Attorney General stated to the court that the indictment was lost, and enquired of the court if he might read it from the minutes, or would he be required to have it copied, which was done. After the jury was sworn the defendant objected to reading the copy instead of producing the original: *Held,* he had waived his right to demand the original.

Case cited: State *v.* Evans, 8 Hum., 113.

Code cited. Secs. 5138, 5139.

### FROM PERRY.

Appeal from the Circuit Court. ELIJAH WALKER, Judge.

No brief for complainant.

ATTORNEY-GENERAL HEISKELL for the State.

FREEMAN, J., delivered the opinion of the court.

The prisoner was convicted in the Circuit Court of Perry county of an assault with intent to commit a rape on Margaret A. Huffstedler. The assault was made on the 17th of July, 1873. The prisoner was sentenced to imprisonment in the penitentiary for fifteen years, and prosecuted an appeal in error to this court.

The first error assigned is that the party was put upon his trial upon a copy of the indictment taken from the minute book on which it had been entered in pursuance of the Code, sec. 5138, requiring all indictments for felony to be entered on the minutes, and the original compared with the entry by the judge before he signs the proceedings of the day." Sec. 5139 provides, " a copy of the minutes shall be as good and valid as the originals, if at any time the latter are lost, destroyed, misplaced, or purloined."

The record shows that when the case was called for trial, the State and defendant announced themselves ready, when it was suggested by the Attorney General that the indictment was lost, and asked if the indictment could be read from the minutes, to which the court replied, " that it could be done by the consent of the defendant." He then inquired of the attorney of the defendant if he was willing for the indictment to be read from the minutes, or required a copy, to which he replied that they required a copy, which was thereupon made out and furnished for the trial. The defendant then moved to quash the indictment, which was overruled. He was then arraigned, plead not guilty, a jury empannelled, and the trial proceeded. The record, however, shows that when the indictment was proposed to be read to the jury at commencement of the trial, the defendant objected to the reading of the copy instead of producing the original.

There certainly was no error in this. The fact was stated to the court that the indictment was lost. It was certainly misplaced, in the language of the

statute, and this statement was not objected to or controverted, but fairly admitted by the defense by refusing to have the paper read from the minutes, and requiring a copy under the statute. When this is furnished he moves to quash it, pleads to it without objection, and for the first time objects to its use after the jury were sworn. To allow such an objection to prevail now would be a mockery of justice, and to allow a party to mislead by consenting, or demanding a copy under the statute, and then to take advantage of that for which he himself had asked. If any definite proof of the loss of the original should be required to be shown, the defendant has clearly waived the necessity of it in this case. When we look at the purpose of the statute, which was to have a permanent record of an examined copy of the indictment, so as to meet such cases, we can see no need of being nicely technical in listening to objections of the character urged. No possible injustice can be done the prisoner, and he can as well know the offense with which he is charged from the copy as the original, and be as well prepared to meet the charge. The difference between the charge made in the precise words of the original, when read from a copy, is one we are unable to appreciate as a practical question.

The next objection is that the indictment is signed simply John M. Taylor, but no official title attached to this signature. In the case of *The State* v. *Evans*, 8 Hum., 113, it was held that this court would take judicial notice of who was the district attorney of any

particular district. We then know that one John M. Taylor is the proper officer to prefer indictments in the county of Perry. When we look to the record we see that such a paper was submitted to the grand jury, returned into court as a true bill, entered on the minutes of the court, and compared with the original by the judge, and no plea or other defense interposed, or objection made to the indictment that it was not signed by the proper officer. We can have no doubt that the John M. Taylor whose name appears to the indictment is the same man that we know to be attorney general or district attorney for that district, and that his signature to the paper was made in the performance of his official duty as such officer.

The only other question presented is, that the evidence does not support the verdict. We have given careful attention to the testimony, and cannot find sufficient grounds on which to base a reversal. The presumption of innocence is removed by the verdict of the jury, and refusal of the judge, who heard and saw the witnesses depose, to grant a new trial. We must be able to see that there is a preponderance of evidence against the finding of the jury, or else the verdict must stand.

We cannot find such a preponderance in the facts presented in this record. The fact that the party was found concealed near his own home the next day can only be accounted for on the principle of conscious guilt, and exposure to danger from the vengeance, perhaps, of the friends and kindred of the outraged party,

or, at any rate, from the demands of the law which had been violated.

Without discussion of the facts in detail, it is suffi-cient to say that the judgment must be affirmed.